**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| **THE ANDERSONS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case Nos.    08-CV-2083** |
| v. ) | **08-CV-2098** |
| ) | |
| **JERRY G. WALKER, ELLEN M. WALKER,** ) | |
| **STEPHANIE WALKER SPIROS, JEREMY** ) | |
| **WALKER, and FALL GRAIN, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION**

This case is before the court for ruling on the Motion to Compel Arbitration (#6) filed in Case No. 08-2098 on May 14, 2008. This court has carefully considered the arguments of the parties and the documents submitted by the parties. Following this careful and thorough review, the Motion to Compel Arbitration (#6) is GRANTED.

BACKGROUND

On April 4, 2008, in Case No. 08-2083, The Andersons, Inc. ("The Andersons") filed a Complaint (#1) against Defendants, Jerry G. Walker, Ellen M. Walker, Stephanie Walker Spiros, and Jeremy Walker (collectively, the "Walkers"), with attached exhibits.[1] The Andersons alleged that it entered into contracts to purchase corn and wheat from Fall Grain, Inc. ("Fall Grain") for the periodic shipments of corn and wheat during the course of the 2007 crop year. The Andersons further alleged that the Walkers, for valuable consideration, agreed to guarantee "payment of current and future obligations owed to [The Andersons] by Fall Grain, Inc." The Andersons alleged that

---

[1] The Andersons alleged that jurisdiction is proper in this court because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

Fall Grain failed to deliver corn to The Andersons or provide adequate assurance of delivery as it was obligated to do under the Fall Grain Corn Contracts with The Andersons. The Andersons alleged that, on December 31, 2007, it notified Fall Grain and the Walkers that the 2007 Fall Grain Corn Contracts had been cancelled pursuant to their terms. The Andersons alleged that it exercised its right under the Fall Grain Corn Contracts to cancel those contracts, establishing a total amount of $3,683,573.00 due from Fall Grain as a result of its breach. The Andersons alleged that the amount due is the difference between the Fall Grain Corn Contracts price and the replacement costs of corn at the time of cancellation, in addition to cancellation charges and other fees as provided by the Fall Grain Corn Contracts. The Andersons similarly alleged that Fall Grain failed to deliver wheat to The Andersons or provide adequate assurance of delivery as it was obligated to do under the Fall Grain Wheat Contracts with the Andersons, resulting in a total amount of $1,836,750.00 due from Fall Grain as a result of its breach. The Andersons alleged that the Guarantees obligated each of the Walkers, jointly and severally, to pay the amounts owed by Fall Grain to The Andersons. The Andersons therefore sought judgment against the Walkers in the total amount of $5,520,323.00.

On April 21, 2008, in Case No. 08-2098, Fall Grain and the Walkers filed a Complaint for Injunctive and Declaratory Relief and Damages (#1) against The Andersons, with attached exhibits.[2] Fall Grain and the Walkers alleged that Fall Grain entered into a series of hedge-to-arrive contracts which provided for the sale of grain to The Andersons Agriservices, Inc. ("Agriservices"). Fall Grain and the Walkers alleged that Agriservices breached the contracts with Fall Grain by refusing to roll them forward and by cancelling them instead. Fall Grain and the Walkers alleged that The Andersons commenced an arbitration proceeding against Fall Grain before the National Grain and

---

[2] Fall Grain and the Walkers alleged that this court has jurisdiction based upon diversity of citizenship.

Feed Association ("NGFA") seeking to recover what it claimed were its damages arising out of the Corn Contracts with Fall Grain which had been cancelled. Fall Grain did not submit to arbitration and the NGFA issued a default award in favor of The Andersons and against Fall Grain for $3,683,573 plus interest. Fall Grain and the Walkers alleged that the NGFA Arbitration System lacked jurisdiction to hear the dispute because the contracts were between Fall Grain and Agriservices, neither of which was a member of the NGFA. Fall Grain and the Walkers also alleged that The Andersons sought to commence an arbitration proceeding against Fall Grain regarding the Wheat Contracts with Fall Grain. In addition, Fall Grain and the Walkers alleged that The Andersons fraudulently procured the Guarantees from the Walkers.

The Complaint filed by Fall Grain and the Walkers included four separate counts. In Count I, they sought a preliminary and permanent injunction enjoining The Anderson from attempting to enforce the default arbitration award regarding the Corn Contracts or commencing arbitration regarding the Wheat Contracts. In Count II, they sought a declaration that the NGFA lacked jurisdiction over the Corn Contracts arbitration, so that the default award is not valid and enforceable, a declaration that the NGFA lacks jurisdiction over disputes arising out of the Wheat Contracts, and a declaration that the Guarantees executed by the Walkers are void and unenforceable because of fraud in their procurement. In Count III, the Walkers sought damages for fraud. In Count IV, the Walkers sought damages for breach of contract.

On May 14, 2008, The Andersons filed its Answer and Affirmative Defenses (#4) in Case No. 08-2098. The Andersons also filed a Motion to Compel Arbitration of the Dispute Related to Fall Grain's Obligations Under the Wheat Contracts (#6) and a Memorandum in Support (#7). Also on May 14, 2008, The Andersons filed its First Amended Complaint (#4) in Case No. 08-2083, with attached exhibits. In the Amended Complaint, The Andersons added Fall Grain as a Defendant and

added a claim seeking confirmation of the arbitrator's award regarding the Fall Grain Corn Contracts. The Andersons stated that, on April 2, 2008, the arbitrator issued a default judgment against Fall Grain in the amount of $3,683,573.00, which became final on April 18, 2008. The Andersons attached copies of the Corn Contracts between Agriservices and Fall Grain and also attached a copy of the arbitration award. The award stated that the "NGFA established jurisdiction over this matter pursuant to the express terms of contracts and by way of The Andersons' status as a NGFA active member."

The Andersons also filed a Motion for Consolidation (#5). The Andersons stated that the actions in Case No. 08-2083 and Case No. 08-2098 share the same subject matter. The Andersons stated that consolidation of the cases would reduce the burden on the parties of maintaining two overlapping lawsuits and would avoid the waste of judicial time and resources. On May 23, 2008, in Case No. 08-2098, Fall Grain filed a Memorandum in Opposition to Motion to Compel Arbitration (#8). In Case No. 08-2083, Fall Grain and the Walkers filed an Answer to The Andersons' First Amended Complaint and Affirmative Defenses (#7).

On June 30, 2008, this court entered an Order (#15) which granted the Motion for Consolidation. This court noted that no opposition had been filed contesting the Motion. This court therefore ordered that Case No. 08-2098 was consolidated with Case No. 08-2083 and assigned to this court. This court designated Case No. 08-2083 as the lead case and ordered that all documents must be filed in this case. On August 13, 2008, a Rule 16 scheduling conference was held before Magistrate Judge David G. Bernthal and, on August 19, 2008, a Discovery Order (#19) was entered.

ANALYSIS

In its Motion to Compel Arbitration, The Andersons contends that the Wheat Contracts at issue expressly provide for arbitration of disputes before the NGFA. The Andersons argues that it

4

is entitled to an order compelling arbitration pursuant to the Federal Arbitration Act (FAA), which states:

> A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of the suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.  9 U.S.C. § 4.

Fall Grain, in contrast, is seeking a declaration that the NGFA lacks jurisdiction over the dispute regarding Wheat Contracts, and that the dispute between Fall Grain and The Andersons is thus non-arbitrable.

The dispute between these parties relates to a series of contracts to purchase and sell wheat entered into by Fall Grain, as Seller, and Agriservices, a subsidiary of The Andersons, as Buyer, in May of 2006.  The Wheat Contracts contained an arbitration clause stating that:

> Both parties agree: (A) THIS CONTRACT IS MADE IN ACCORDANCE WITH THE APPLICABLE GRAIN TRADE RULES OF THE NATIONAL GRAIN AND FEED ASSOCIATION (A COPY WILL BE PROVIDED UPON REQUEST) EXCEPT AS MODIFIED THEREIN, AND THE PARTIES WILL BE BOUND THEREBY; AND (B) ANY DISPUTES OR CONTROVERSIES ARISING OUT OF THIS CONTRACT SHALL BE ARBITRATED BY THE NATIONAL GRAIN AND FEED ASSOCIATION, PURSUANT TO ITS ARBITRATION RULES.  THE DECISION

5

> AND AWARD DETERMINED THROUGH SUCH ARBITRATION SHALL BE FINAL AND BINDING UPON THE BUYER AND SELLER. JUDGMENT UPON THE ARBITRATION AWARD MAY BE ENTERED AND ENFORCED IN ANY COURT HAVING JURISDICTION THEREOF.

The Wheat Contracts further provided that they "inure to the benefit of Buyer, its successors and assigns" and that its terms "shall be governed by the laws of the state of Illinois." In December 2006, Agriservices merged with The Andersons and ceased to exist. The Andersons is an active member of the NGFA. On March 19, 2008, following Fall Grain's alleged breach of the Wheat Contracts, The Andersons commenced arbitration proceedings with the NGFA. Fall Grain then filed its Complaint seeking, in pertinent part, a declaration that it was not required to arbitrate the dispute arising out of the Wheat Contracts. The NGFA then stayed the arbitration related to the Wheat Contracts, and The Andersons filed its Motion to Compel Arbitration.

The arbitration rules of the NGFA state that:

> The National Grain and Feed Association (NGFA) may properly consider a case involving a dispute between or among any of the following:
>
> (1) Active members of the National Association (among whom arbitration by the National Association is made compulsory by the Association Bylaws)...[or]
>
> (2) Active members of the National and nonmembers, by consent of both parties or by court order. In the absence of a court order a case between a member and a nonmember may not be properly considered by the National Arbitration

6

>
> Committee without the consent of both parties. If the contract in dispute between a member and nonmember provides for arbitration by the National Association or under its Arbitration Rules, the parties to the contract shall be deemed to have consented to arbitration under these Arbitration Rules.

In its Motion to Compel, The Andersons argues that this Court should compel arbitration before the NGFA on disputes related to Wheat Contracts because The Andersons is a party to the contracts as a matter of law, in that Agriservices merged with The Andersons, after which point Agriservices ceased to exist as a separate entity. The Andersons also contend that the "dba" or "doing business as" language in the contract ("The Andersons Agriservices, Inc., an Illinois corporation, dba 'The Andersons'") confers upon The Andersons the right to enforce the arbitration clause. Fall Grain, in opposition, argues that the arbitration clause of the Wheat Contracts suffers from a jurisdictional defect that renders the provision unenforceable because neither Agriservices nor Fall Grain were members of the NGFA at the time the contracts were formed, putting both parties outside the NGFA's jurisdiction. Fall Grain thus contends that The Andersons does not have the right to enforce the arbitration provisions because at the time of contract formation the arbitration clause was unenforceable due to the NGFA's lack of jurisdiction, meaning that Agriservices did not retain any enforcement rights that it could assign to The Andersons in the merger. Secondly, Fall Grain argues that the "dba" language was simply a convenient shortening of Andersons Agriservices, Inc. and did not make The Andersons a party to the contract.

The FAA mandates enforcing arbitration agreements if such agreements are (1) written; (2) part of a contract or transaction involving interstate commerce; and (3) valid under general principles of contract law. 9 U.S.C § 2. The FAA embodies a federal policy of favoring arbitration,

with any doubts with respect to arbitrability resolved in favor of arbitration. See James v. McDonald's Corp., 417 F.3d 672, 676-77 (7th Cir. 2005). However, a party cannot be compelled to arbitrate if that party did not originally agree to submit the dispute to arbitration. James, 417 F.3d at 677; see also Grundstad v. Ritt, 106 F.3d 201, 204 (7th Cir. 1997). Whether two parties have agreed to arbitrate a dispute is an issue for the courts to decide. See AT & T Techs., Inc. v. Communc'ns Workers of Am., 475 U.S. 643, 649 (1986). To evaluate the validity of an arbitration agreement, federal courts should look to state contract law governing the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).[3] Under Illinois law, agreements to arbitrate are valid as long as there is a mutual promise to arbitrate. Jenkins v. Trinity Evangelical Lutheran Church, 825 N.E.2d 1206, 1213 (Ill. App. Ct. 2005). Normal contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements. Doctor's Assocs., Inc. v Casarotto, 517 U.S. 681, 687 (1996).

In this case, Fall Grain is not arguing duress or fraud, but rather a fatal lack of jurisdiction, with respect to the NGFA's ability to arbitrate the dispute. Both parties concede that there is a near total lack of controlling case law with regards to the very particular factual and legal issues raised by the parties in this dispute. However, in accordance with a federal policy favoring arbitration, this court notes that it is obliged to compel arbitration, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." See Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 78 (1998) (citations omitted); see also Int'l Bhd. of Elec. Workers, Local 21 v. Ill. Bell Tel. Co., 491 F.3d 685, 687-88 (7th Cir. 2007). This court also notes that the party opposing arbitration bears the burden of establishing that the

---

[3] The Andersons states, and Fall Grain does not dispute, that Illinois is the substantive state law that should govern in this case.

arbitration clause should not be enforced. See Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226-27 (1987).

Fall Grain argues that the NGFA has no jurisdiction because neither party to the Wheat Contracts was a member of the organization at the time the contracts were formed. This court notes, as an initial matter, that the NGFA did not express any jurisdictional qualms with respect to the arbitrability of the dispute regarding the essentially identical Corn Contracts, which were also entered between Fall Grain and Agriservices. In its default judgment decision regarding the Corn Contracts between the parties, the NGFA's arbitration panel stated that the "NGFA established jurisdiction over this matter pursuant to the express terms of contracts and by way of The Andersons' status as a NGFA active member."

In a case that was factually very similar to this case and also involved The Andersons (although it raised distinct legal issues), the Seventh Circuit concluded that the district court properly compelled arbitration before the NGFA for disputes between a farmer and the grain elevator company, where the contracts specifically called for arbitration before this body. Harter v. Iowa Grain Co., 220 F.3d 544, 553-57 (7th Cir. 2000); see also Andersons, Inc. v. Horton Farms, 166 F.3d 308, 325-326 (6th Cir. 1998) (finding that procedural safeguards were in place which adequately provided for the fairness of NGFA proceedings). The Seventh Circuit also found that the NGFA was not structurally biased against the farmer. See Harter, 220 F.3d at 555-56. Thus, while the Seventh Circuit Court of Appeals has not ruled with respect to the specific jurisdictional claim raised by Fall Grain, it has ruled that the NGFA's arbitration procedures are reasonable and that contractual agreements to arbitrate before that body should be presumed valid, absent a showing of direct bias. See Harter, 220 F.3d at 556.

With regard to Fall Grains's jurisdictional concern, this court turns to Illinois law regarding arbitration agreements and contract formation, and notes the decision of the Illinois Appellate Court in <u>Van C. Argiris & Co. v. May</u>, 398 N.E.2d 1239 (Ill. App. Ct. 1979). That case involved an employment dispute between a real estate agent, May, and his former employer, Argiris. The Illinois Appellate Court held that the Arbitration Committee of the Chicago Real Estate Board had jurisdiction over the controversy between the parties. <u>Argiris</u>, 398 N.E.2d at 1240-43. At the trial court level, Argiris sought to vacate the arbitration award, arguing that the dispute between the parties should not have been subject to arbitration because May was not a member of the Chicago Real Estate Board at the time of his employment (which was when the claim arose) and the Board's bylaws provided that the Arbitration Committee only had jurisdiction over controversies "between members." <u>Argiris</u>, 398 N.E.2d at 1241. The Appellate Court affirmed the trial court's decision upholding the arbitration award, concluding that, because both parties were members of the Chicago Real Estate Board at the time the complaint was <u>filed</u>, the Arbitration Committee had the authority to resolve the dispute. <u>Argiris</u>, 398 N.E.2d at 1242-43. The Appellate Court stated that "the language of the [bylaws] does not restrict the Arbitration Committee's jurisdiction to only those controversies to which the parties were members of the Board at the time of the acts or transactions from which the controversies arose." <u>Argiris</u>, 398 N.E.2d at 1242. The Appellate Court noted that Argiris had not provided any precedent supporting its jurisdictional argument and further noted that written agreements to submit controversies to arbitration are "valid, enforceable and irrevocable save upon such grounds as exist at law or equity for the revocation of any contract." <u>Argiris</u>, 398 N.E.2d at 1242, <u>quoting</u> the Illinois Uniform Arbitration Act, 710 Ill Comp. Stat. 5/1.

In this case, the basis of Fall Grain's argument that there was no valid and enforceable

agreement to arbitrate is that the NGFA lacks jurisdiction to arbitrate the dispute because neither Fall Grain nor Agriservices was a member of the NGFA at the time the contracts were entered. This argument fares no better than the argument made in <u>Argiris</u>. There is nothing in the language of the NGFA's arbitration rules to suggest that one party must be a member of the organization at the time of contract formation. The language simply provides that the NGFA "may properly consider a case involving a dispute between . . . [a]ctive members of the National and nonmembers, by consent of both parties." In the absence of explicit language to the contrary, NGFA's jurisdiction could reasonably be established at the point when The Andersons commenced arbitration. See <u>Asadourian v. Kuni German Motors, LLC</u>, 2007 WL 4388490, at *4 (D. Or. 2007)  (holding that, in employment dispute where corporate subsidiary no longer existed at the time arbitration complaint was filed, the plaintiff was bound to arbitrate with the parent company that survived). There is no factual dispute that The Andersons was both a party to this dispute (as the successor to Agriservices, post merger) and an active member of the NGFA when The Andersons submitted an arbitration complaint to the NGFA regarding the Wheat Contracts. Because Fall Grain cannot clearly establish that the NGFA's jurisdiction must, of necessity, be established at the moment of contract formation, Fall Grain has not shown that the agreement to arbitrate is not enforceable.

This court agrees with The Andersons that Fall Grain's hyper-technical reading of the contracts is at odds with the well-established federal policy of favoring arbitration if it appears facially obvious that the two parties contractually committed themselves to the arbitration of disputes. Fall Grain clearly agreed to arbitrate disputes arising out of the Wheat Contracts. Therefore, because there is nothing in the arbitration rules of the NGFA that mandates that jurisdiction be established at the moment of contract formation, and there is no dispute that The

Andersons is an active member of the NGFA and was an active member when it submitted the dispute to arbitration, the dispute regarding the Wheat Contracts must be submitted to arbitration. See <u>Argiris</u>, 398 N.E.2d at 1242-43.

    IT IS THEREFORE ORDERED THAT:

    (1) The Andersons' Motion to Compel Arbitration (#6) is GRANTED.

    (2) This court hereby orders that Fall Grain is compelled to submit its claims relating to its obligations under the Wheat Contracts to arbitration.

    (3) Because the claims involved in these consolidated cases are not wholly covered by this court order compelling arbitration, the remaining claims are referred to the Judge Bernthal for further proceedings.

    ENTERED this 28th day of August, 2008

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE