UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **THE ANDERSONS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case Nos. 08-CV-2083 |
| v. ) | 08-CV-2098 |
| ) | |
| **JERRY G. WALKER, ELLEN M. WALKER,** ) | |
| **STEPHANIE WALKER SPIROS, JEREMY** ) | |
| **WALKER, and FALL GRAIN, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION**

This case is before the court for ruling on the Motion to Confirm Arbitration Award (#43) and Motion for Summary Judgment (#45) filed by Plaintiff, The Andersons, Inc. (The Andersons). This court has carefully considered the arguments of the parties and the documents submitted by the parties. Following this careful and thorough review, The Andersons' Motion to Confirm Arbitration Award (#43) is GRANTED and the Motion for Summary Judgment (#45) is DENIED. This case remains scheduled for a final pretrial conference on April 1, 2010, at 1:30 p.m. and a jury trial on April 12, 2010 at 9:00 a.m.

FACTS

The Andersons is a grain dealer which had purchased grain, including wheat and corn, from Defendant Fall Grain, Inc. (Fall Grain) for many years. The Andersons, through its wholly owned subsidiary, The Andersons Agriservices, Inc. (Agriservices) and Fall Grain entered into a series of cash forward grain contracts for the 2006, 2007, and 2008 crop years. During the summer of 2007, Fall Grain informed The Andersons that its supply of grain was not sufficient to meet its obligations to The Andersons under the grain contracts for the 2006 crop year. A meeting was held on August

14, 2007. The following persons attended the meeting: Jerry Walker, who owns all of the stock in Fall Grain; Stephanie Walker Spiros, who is Jerry Walker's daughter and is authorized to act on behalf of Fall Grain; Larry Wood, who was The Andersons' location manager at its Champaign facility; and Matt Anderson, who testified that he has had credit management responsibilities for the past 18 years for The Andersons and is also a member of the Anderson family.

Following the meeting, on August 20, 2007, Defendants Jerry Walker, Ellen Walker, Stephanie Walker Spiros, and Jeremy Walker (collectively, the Walkers) each signed a personal guarantee agreement. Each agreement stated, in pertinent part, that "for and in consideration of $1 and other consideration, delivery and adequacy of which is hereby acknowledged hereby unconditionally guarantee payment of current and future obligations owed to The Andersons, Inc., its successors and assigns and its and their affiliated businesses (hereafter "Andersons"), by Fall Grain, Inc."

According to the Walkers, they signed the personal guarantee agreements so that Fall Grain's obligation to provide grain to The Andersons could be rolled over into future crop years and to assure timely payment from The Andersons for grain deliveries made by Fall Grain. Stephanie Spiros testified that "[w]e told them we would sign a personal guarantee for the right to roll and they told me that if I signed the personal guarantee that I would have the right to roll and I would have my money for deliveries in a timely fashion." Jerry Walker testified that he and Stephanie talked to Wood and Matt Anderson "about having the flexibility" to roll the obligation to provide grain into future years, if needed, and stated that Wood and Matt Anderson assured them that would happen if they signed the personal guarantees. He testified "[s]o that was the reason why we signed the personal guarantee[s]." Both Jerry Walker and Stephanie Spiros testified that The Andersons had allowed them to roll Fall Grain's obligation to provide grain on prior occasions. Wood agreed at

2

his deposition that, at the meeting on August 14, 2007, they discussed allowing "greater flexibility" in future dealings. Matt Anderson testified that, at the August 14, 2007, meeting, he raised the prospect of signing personal guarantees to provide "more flexibility, so to speak, to continue working with a large and valued account." In fact, The Andersons did roll 200,000 bushels of wheat contracts into corn in the fall of 2007. After the August 14, 2007, meeting, Fall Grain did not originate any new grain contract obligations to The Andersons.

PROCEDURAL HISTORY

On April 4, 2008, in Case No. 08-2083, The Andersons filed a Complaint (#1) against the Walkers, with attached exhibits.[1] The Andersons alleged that it entered into contracts to purchase corn and wheat from Fall Grain for the periodic shipments of corn and wheat during the course of the 2007 crop year. The Andersons further alleged that the Walkers, for valuable consideration, agreed to guarantee "payment of current and future obligations owed to [The Andersons] by Fall Grain, Inc." The Andersons alleged that Fall Grain failed to deliver corn to The Andersons or provide adequate assurance of delivery as it was obligated to do under the Fall Grain corn contracts with The Andersons. The Andersons alleged that, on December 31, 2007, it notified Fall Grain and the Walkers that the 2007 Fall Grain corn contracts had been cancelled pursuant to their terms. The Andersons alleged that it exercised its right under the Fall Grain corn contracts to cancel those contracts, establishing a total amount of $3,683,573 due from Fall Grain as a result of its breach. The Andersons alleged that the amount due is the difference between the Fall Grain corn contracts price and the replacement costs of corn at the time of cancellation, in addition to cancellation charges and other fees as provided by the Fall Grain corn contracts. The Andersons similarly

---

[1] The Andersons alleged that jurisdiction is proper in this court because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

alleged that Fall Grain failed to deliver wheat to The Andersons or provide adequate assurance of delivery as it was obligated to do under the Fall Grain wheat contracts with the Andersons, resulting in a total amount of $1,836,750 due from Fall Grain as a result of its breach. The Andersons alleged that the guarantees obligated each of the Walkers, jointly and severally, to pay the amounts owed by Fall Grain to The Andersons. The Andersons therefore sought judgment against the Walkers in the total amount of $5,520,323.

On April 21, 2008, in Case No. 08-2098, Fall Grain and the Walkers filed a Complaint for Injunctive and Declaratory Relief and Damages (#1) against The Andersons, with attached exhibits.[2] Fall Grain and the Walkers alleged that Fall Grain entered into a series of hedge-to-arrive contracts which provided for the sale of grain to Agriservices. Fall Grain and the Walkers alleged that Agriservices breached the contracts with Fall Grain by refusing to roll them forward and by cancelling them instead. Fall Grain and the Walkers alleged that The Andersons commenced an arbitration proceeding against Fall Grain before the National Grain and Feed Association (NGFA) seeking to recover what it claimed were its damages arising out of the corn contracts with Fall Grain which had been cancelled. Fall Grain did not submit to arbitration and the NGFA issued a default award in favor of The Andersons and against Fall Grain for $3,683,573 plus interest. Fall Grain and the Walkers alleged that the NGFA Arbitration System lacked jurisdiction to hear the dispute because the contracts were between Fall Grain and Agriservices, neither of which was a member of the NGFA. Fall Grain and the Walkers also alleged that The Andersons sought to commence an arbitration proceeding against Fall Grain regarding the wheat contracts with Fall Grain. In addition, Fall Grain and the Walkers alleged that The Andersons fraudulently procured the guarantees from

---

[2] Fall Grain and the Walkers alleged that this court has jurisdiction based upon diversity of citizenship.

the Walkers.

The Complaint filed by Fall Grain and the Walkers included four separate counts. In Count I, they sought a preliminary and permanent injunction enjoining The Andersons from attempting to enforce the default arbitration award regarding the corn contracts or commencing arbitration regarding the wheat contracts. In Count II, they sought a declaration that the NGFA lacked jurisdiction over the corn contracts arbitration, so that the default award is not valid and enforceable, a declaration that the NGFA lacks jurisdiction over disputes arising out of the wheat contracts, and a declaration that the guarantees executed by the Walkers are void and unenforceable because of fraud in their procurement. In Count III, the Walkers sought damages for fraud. In Count IV, the Walkers sought damages for breach of contract.

On May 14, 2008, in Case No. 08-2098, The Andersons filed a Motion to Compel Arbitration of the Dispute Related to Fall Grain's Obligations Under the Wheat Contracts (#6) and a Memorandum in Support (#7). In its Motion to Compel, The Andersons argued that this court should compel arbitration before the NGFA on disputes related to the wheat contracts entered into between Fall Grain and Agriservices. The Andersons argued that, on or about December 26, 2006, Agriservices merged with The Andersons, after which point Agriservices ceased to exist as a separate entity. The Andersons argued that it was a party to the wheat contracts and sought to compel arbitration of the dispute between the parties based upon the arbitration clause in the agreements.

Also on May 14, 2008, The Andersons filed its First Amended Complaint (#4) in Case No. 08-2083, with attached exhibits. In the Amended Complaint, The Andersons added Fall Grain as a Defendant and added Count II, a claim seeking confirmation of the arbitrator's award regarding the Fall Grain corn contracts. The Andersons stated that, on April 2, 2008, the arbitrator issued a default judgment against Fall Grain in the amount of $3,683,573, which became final on April 18,

5

2008. The Andersons attached copies of the corn contracts between Agriservices and Fall Grain and also attached a copy of the arbitration award. The award stated that the "NGFA established jurisdiction over this matter pursuant to the express terms of contracts and by way of The Andersons' status as a NGFA active member." The Andersons also filed a Motion for Consolidation (#5). The Andersons stated that the actions in Case No. 08-2083 and Case No. 08-2098 share the same subject matter. The Andersons stated that consolidation of the cases would reduce the burden on the parties of maintaining two overlapping lawsuits and would avoid the waste of judicial time and resources.

On May 23, 2008, in Case No. 08-2098, Fall Grain filed a Memorandum in Opposition to Motion to Compel Arbitration (#8). Fall Grain argued that the arbitration clause in the wheat contracts suffered from a jurisdictional defect that rendered the provision unenforceable because neither Agriservices nor Fall Grain were members of the NGFA at the time the contracts were formed, putting both parties outside the NGFA's jurisdiction. Fall Grain thus contended that The Andersons did not have the right to enforce the arbitration provisions because at the time of contract formation the arbitration clause was unenforceable due to the NGFA's lack of jurisdiction, meaning that Agriservices did not retain any enforcement rights that it could assign to The Andersons in the merger.

On June 30, 2008, this court entered an Order (#15) which granted the Motion for Consolidation and ordered that Case No. 08-2098 was consolidated with Case No. 08-2083 and assigned to this court. On August 13, 2008, a Rule 16 scheduling conference was held before Magistrate Judge David G. Bernthal and, on August 19, 2008, a Discovery Order (#19) was entered. This case was set for a final pretrial conference on April 1, 2010, at 1:30 p.m. and a jury trial on April 12, 2010, at 9:00 a.m.

On August 28, 2008, this court entered an Opinion (#20) which granted The Andersons'

Motion to Compel Arbitration. The Andersons, Inc. v. Walker, 573 F. Supp. 2d 1065 (C.D. Ill. 2008). This court carefully considered the arguments and documents presented by the parties and concluded that Fall Grain clearly agreed to arbitrate disputes arising out of the wheat contracts. This court, after careful analysis, rejected Fall Grain's argument that there was no valid and enforceable agreement to arbitrate before the NGFA because neither Agriservices nor Fall Grain was a member of the NGFA at the time the contracts were formed. This court relied, in part, on the decision of the Illinois Appellate Court in Van C. Argiris & Co. v. May, 398 N.E.2d 1239 (Ill. App. Ct. 1979), wherein the court rejected a very similar argument.

This court concluded that there was nothing in the language of the NGFA's arbitration rules to suggest that one party must be a member of the organization at the time of contract formation. The language simply provided that the NGFA "may properly consider a case involving a dispute between . . . [a]ctive members of the National and nonmembers, by consent of both parties." This court concluded that, in the absence of explicit language to the contrary, NGFA's jurisdiction could reasonably be established at the point when The Andersons commenced arbitration. This court agreed with The Andersons that Fall Grain's hyper-technical reading of the contracts was at odds with the well-established federal policy of favoring arbitration if it appears facially obvious that the two parties contractually committed themselves to the arbitration of disputes. This court stated that Fall Grain clearly agreed to arbitrate disputes arising out of the wheat contracts and that, because there was nothing in the arbitration rules of the NGFA that mandates that jurisdiction be established at the moment of contract formation, and there is no dispute that The Andersons is an active member of the NGFA and was an active member when it submitted the dispute to arbitration, the dispute regarding the wheat contracts must be submitted to arbitration.

On December 11, 2008, The Andersons filed a Motion for Summary Judgment on Count II of Amended Complaint (#21). The Andersons argued that the corn contracts between The

Andersons and Fall Grain contained an arbitration clause identical to the arbitration clause included in the wheat contracts between the Andersons and Fall Grain. The Andersons argued that, based upon this court's Opinion granting its Motion to Compel Arbitration regarding the wheat contracts between The Andersons and Fall Grain, this court should grant summary judgment in its favor on Count II of its Amended Complaint and confirm the arbitration award entered against Fall Grain relating to Fall Grain's obligation under the corn contracts. The Andersons argued that this court had ruled that the arbitration clause in the wheat contracts was enforceable, and should, pursuant to the law of the case, apply that ruling to the identical arbitration clause contained in the corn contracts.

On February 25, 2009, this court entered an Opinion (#29) which granted The Andersons' Motion for Summary Judgment on Count II (#21). <u>Andersons, Inc. v. Walker</u>, 2009 WL 484971 (C.D. Ill. 2009). This court noted that Fall Grain had conceded that the legal issue presented by The Andersons' Motion for Summary Judgment "is the same one previously presented" by The Andersons' Motion to Compel Arbitration. This court stated that it carefully considered the parties' arguments when it entered its Opinion (#20) on August 28, 2008, and granted The Andersons' Motion to Compel Arbitration. This court further stated that it found no reason to depart from its previous, carefully thought out decision. This court noted that Fall Grain provided no response to the <u>Van C. Agiris</u> case relied upon by this court. This court also noted that, after The Andersons' Motion for Summary Judgment was filed, it was allowed leave to file its Second Amended Complaint (#24). This court concluded that, because Count II of the Second Amended Complaint was essentially identical to Count II of the Amended Complaint, summary judgment was granted as to Count II of the Second Amended Complaint (#24) and The Andersons were granted the relief sought against Fall Grain.

On March 4, 2009, The Andersons filed a new case against Fall Grain, Case No. 09-2060,

seeking confirmation of an arbitration award entered regarding a series of written forward contracts for the delivery of corn during the course of the 2008 crop year. The Andersons stated that a dispute arose between The Andersons and Fall Grain when Fall Grain failed to deliver corn to The Andersons or provide adequate assurance of its intent and/or capacity to deliver corn as it was obligated to do under the contracts. The Andersons stated that it submitted the dispute to arbitration but that Fall Grain did not respond. The NGFA therefore entered a default judgment against Fall Grain and in favor of The Andersons in the amount of $3,557,500.00 on January 30, 2009. On April 22, 2009, The Andersons filed a Motion for Summary Judgment and Fall Grain filed a Motion to Vacate Arbitration Award. On August 18, 2009, this court entered an Opinion in that case. The Andersons, Inc. v. Fall Grain, Inc., 646 F. Supp. 2d 1029 (C.D. Ill. 2009). This court again rejected Fall Grain's argument that there was no valid and enforceable agreement to arbitrate. This court therefore confirmed the arbitrator's award in the amount of $3,557,500 plus interest to accrue at the statutory rate from January 30, 2009 until paid in full. This court also concluded that The Andersons was allowed to recover arbitration fees not less than $10,000 and was entitled to attorneys fees and costs in the total amount of $11,354.88. Judgment was entered in accordance with this court's Opinion and Case No. 09-2060 was terminated.

On November 24, 2009, The Andersons filed a Joint Stipulation Regarding Additional Claimed Damages to be Added by the Andersons to Count I of its Second Amended Complaint (#42). The Andersons stated that counsel for Defendants agreed to stipulate that The Andersons canceled additional corn contracts on July 2, 2009, and, on that date, the difference in market price and contract price along with cancellation charges totaled $122,500. The parties further stipulated that The Andersons demanded payment in the amount of $122,500 and Fall Grain and the Walkers have not paid that amount. The parties stipulated that the amount of $122,500 was added to The Andersons' claim for damages in Count I of the Second Amended Complaint so that the total claim

9

for damages against the Walkers in Count I of the Second Amended Complaint equals $9,200,323.

ANALYSIS

I. MOTION TO CONFIRM ARBITRATION AWARD

On November 25, 2009, The Andersons filed a Motion to Confirm Arbitration Award (#43) and a Memorandum in Support (#44). The Andersons stated that, on October 20, 2009, the arbitrators issued a decision in The Andersons' favor regarding wheat contracts The Andersons entered into with Fall Grain during the course of the 2007 crop year. The dispute related to the 2007 wheat contracts was fully briefed by the parties, and the arbitrators issued an award in favor of The Andersons and against Fall Grain in the amount of $1,791,930. The Andersons attached exhibits in support of its Motion, including copies of the applicable contracts and a copy of the arbitrators' decision. The Andersons argued that the arbitration clause contained in the applicable wheat contracts had already been held enforceable by this court when this court granted The Andersons' Motion to Compel Arbitration. The Andersons therefore asked this court to confirm the arbitrators' award.

On December 14, 2009, Fall Grain filed a Response in Opposition to The Andersons' Motion to Confirm Arbitration Award (#46). Fall Grain admitted that this court had already decided the legal issue involved in determining the validity of the arbitrators' award. Fall Grain nevertheless again argued that there was no valid and enforceable agreement to arbitrate the dispute before the NGFA. Once again, Fall Grain did not discuss this court's reliance on the Van C. Agiris decision. This court again concludes that there was a valid and enforceable agreement to arbitrate. Accordingly, The Andersons's Motion to Confirm Arbitration Award (#43) is GRANTED. The Andersons is therefore entitled to judgment in its favor, and against Fall Grain, in the amount of $1,791,930.00 plus interest that shall accrue at the rate of 5.25 % from the date of the award, October 20, 2009.

## II. MOTION FOR SUMMARY JUDGMENT

### A. ARGUMENTS

On November 25, 2009, The Andersons filed a Motion for Summary Judgment (#45), with attached exhibits. In its Motion for Summary Judgment, The Andersons asked this court to enter judgment against the Walkers, jointly and severally, in the amount of $9,200,323 plus interest, attorneys' fees and costs. The Andersons argued that it is entitled to summary judgment because (1) collateral estoppel bars the re-litigation of whether Fall Grain had a unilateral right to change the crop year in which it was obligated to deliver grain to The Andersons under the grain contracts; (2) there is no genuine issue of material fact regarding the Walkers' claim that the guarantees were procured by fraud because there is insufficient evidence that The Andersons made any false statements; and (3) even if there is a question of material fact regarding the Andersons' utterance of a false statement, the claim of fraudulent inducement cannot be sustained because the Walkers could not have reasonably relied on such a statement.

On December 21, 2009, the Walkers filed a Response to Motion for Summary Judgment (#47), with attached exhibits. The Walkers argued that genuine issues of material fact "abound" regarding The Andersons' fraudulent inducement of the Walkers to execute their personal guarantees, The Andersons' failure to provide the promised-for consideration in exchange for which it obtained the personal guarantees, and those guarantees' unenforceability for lack of consideration. On January 4, 2010, The Andersons filed its Reply (#48), with attached exhibits.

### B. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court

has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002).

## C. RULING

### 1. COLLATERAL ESTOPPEL

During the proceedings before the arbitrators regarding wheat contracts, which led to the October 20, 2009, arbitrators' award this court has affirmed, Fall Grain argued that The Andersons breached the contracts by unilaterally refusing to roll them forward and by cancelling the contracts. The arbitrators did not accept this argument and ruled in favor of The Andersons. The Andersons, in its Motion for Summary Judgment, argued that it is entitled to summary judgment because collateral estoppel bars re-litigation of whether Fall Grain had a unilateral right to change the crop year in which it was obligated to deliver grain to The Andersons under the grain contracts. This court does not agree.

The Andersons is correct that, under the doctrine of collateral estoppel, once an arbitration panel has decided an issue necessary to its award, that decision is conclusive in a subsequent lawsuit, even if the claims asserted in the lawsuit differ from the claim asserted in the arbitration. See O'Neill v. Merrill Lynch, Pierce, Fenner & Smith, 654 F. Supp. 347, 350 n.1 (N.D. Ill. 1987). However, under Illinois law, the essential elements for application of collateral estoppel are: (1) the issues decided in the prior adjudication must be identical to the issues in the current action; (2) there must have been a final judgment on the merits in the prior action; and (3) the party against whom the estoppel is asserted must have been a party or in privity with a party to the prior case. Brokaw

v. Weaver, 305 F.3d 660, 669 (7th Cir. 2002).[3] The Andersons argued that collateral estoppel applies here because the factual issues behind the claims are identical and the parties to the lawsuit were in privity with the party whose claim was subject to arbitration. The Andersons contended that "Fall Grain's argument to the arbitrators and the very premise relied upon by [the Walkers] in their argument to this Court is sufficiently similar to preclude [them] from re-litigating it here."

In response, the Walkers argued that collateral estoppel does not apply for several reasons, including that the issue in this case is completely different from the issue presented to the arbitrators. The Walkers contended that whether a right to roll is inherent in the type of contracts involved here between The Andersons and Fall Grain "is distinct from whether Andersons fraudulently procured guarantees from Defendants through promises of future rolling" in a negotiation that occurred after the contracts were entered.

This court has carefully considered the arguments presented by the parties. This court concludes that the issues related to the procurement of the personal guarantees from the Walkers, and whether the Walkers are jointly and severally liable for $9,200,323, are completely different from the issue of whether Fall Grain breached its contracts with The Andersons. Therefore, this court concludes that litigation of issues related to the personal guarantees are not barred by collateral estoppel.

## 2. FRAUD

The Andersons also argued that there is no genuine issue of material fact that the guarantees were procured by fraud because there is insufficient evidence that The Andersons made any false statements. The Andersons argued that the correspondence between Fall Grain and The Andersons during the relevant period shows that The Andersons broached the issue of cancellation of the grain

---

[3] The parties do not dispute that Illinois law applies to this case.

contracts over and over after the point in time that the Walkers allege that Fall Grain had been accorded the right to roll its obligation to deliver grain to a future crop year. The Andersons further argued that the Walkers have not been able to point to a single sentence within the voluminous documents produced in discovery which shows that they believed that The Andersons was reneging on a promise it had made to allow Fall Grain to roll the contracts. The Andersons contended that if the Walkers "truly felt that The Andersons was reneging on a promise that allowed them to unilaterally change the year a grain delivery was due, it strains credibility to the breaking point that they did not do more to express their outrage, as The Andersons repeatedly stated that the Grain Contracts would be cancelled." The Andersons also argued that it was contrary to logic and unsupported by the evidence that The Andersons would enter into such a one-sided agreement.

In response, the Walkers argued that The Andersons' argument boils down to a contention that its version of disputed events is more credible. The Walkers contended that The Andersons' argument is wholly improper on a motion for summary judgment, where the inquiry is whether genuine issues of material fact exist. The Walkers contended that they have provided sufficient evidence regarding the representations made by The Andersons at the August 14, 2007, meeting to raise a genuine issue of material fact, even though The Andersons now denies making the representations. The Walkers argued that the evidence also supports the inference that Matt Anderson and Wood possessed either actual or apparent authority at the August 14, 2007, meeting to make the representations on which the Walkers relied. The Walkers also pointed out that Stephanie Spiros and Jerry Walker testified that they made repeated oral objections to the cancellation of Fall Grain's contracts, so that The Andersons' arguments regarding the lack of written objections by the Walkers is not persuasive. The Walkers argued that there was sufficient evidence to raise a genuine issue of fact regarding whether The Andersons made misrepresentations of material fact to the Walkers for the purpose of inducing them to act, which The Andersons knew

14

to be false, which the Walkers reasonably believed to be true and which they relied on to their detriment. See Jordan v. Knafel, 880 N.E.2d 1061, 1069 (Ill. App. Ct. 2007).

This court agrees with the Walkers that there are clearly genuine issues of material fact regarding the promises made by The Andersons to induce the Walkers to sign the personal guarantees. This court agrees with the Walkers that The Andersons is asking this court to find not credible, and disregard, the testimony of Stephanie Spiros and Jerry Walker regarding the representations made by representatives of The Andersons regarding the purpose and effect of the personal guarantees. In deciding a motion for summary judgment, this court cannot "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." Stokes v. Bd. of Educ. of City of Chicago, ___ F.3d ___, 2010 WL 986639, at *1 (7th Cir. 2010). Further, as noted previously, this court must view all the evidence in the record in the light most favorable to the nonmoving party. See Stokes, 2010 WL 986639, at *1. This court additionally notes that the testimony of Wood and Matt Anderson regarding "flexibility" is not entirely inconsistent with the testimony of Stephanie Spiros and Jerry Walker. Based upon the applicable standard, this court concludes that The Andersons has not shown that there is no genuine issue of material fact on the issue of whether the guarantees were procured by fraud.

### 3. REASONABLE RELIANCE

The Andersons also argued that, even if a question of material fact exists regarding The Andersons' utterance of a false statement, the claim of fraudulent inducement cannot be sustained because the Walkers could not have reasonably relied on such a statement. The Andersons argued that, under Illinois law, "[a] person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another." Chicago Export Packing Co. v. Teledyne Indus., Inc., 566 N.E.2d 326, 329 (Ill. App. Ct. 1990); see also Minch v. George, 917 N.E.2d 1169, 1181 (Ill. App. Ct. 2009). If the party's reliance is unreasonable in light of the

15

information open to the person, the loss is considered the person's own responsibility. Minch, 917 N.E.2d at 1181. The Andersons further argued that there could not have been any reasonable reliance by Ellen Walker or Jeremy Walker because they did not have any communication with The Andersons.

In response, the Walkers argued that they have presented evidence regarding their reasonable reliance. They noted that the evidence shows that The Andersons' representations regarding rolling were consistent with the parties' prior practices, arguing that the evidence shows that The Andersons rolled contracts between crop years both with Fall Grain and with other farmers, that The Andersons internal contracting procedures provided for automatic rolling of grain contracts, and that Wood was well aware of the "typical" fees for rolling between crop years and admitted that no rule of the NGFA prohibits rolling between crop years. The Walkers also pointed out that the terms of the grain contracts between The Andersons and Fall Grain explicitly state that amendments may be written or oral. They also argued that Ellen Walker and Jeremy Walker had contact with The Andersons through Stephanie Spiros and Jerry Walker and their reliance was just as reasonable as that of Spiros and Jerry Walker.

This court agrees with the Walkers that The Andersons has not shown that there is no genuine issue of material fact regarding whether the Walkers could reasonably rely on the representations allegedly made by The Andersons.

For all of the reasons stated, this court concludes that The Andersons' Motion for Summary Judgment must be denied.

IT IS THEREFORE ORDERED THAT:

(1) The Andersons' Motion to Confirm Arbitration Award (#43) is GRANTED.

(2) The Andersons' Motion for Summary Judgment (#45) is DENIED.

(3) This case remains scheduled for a final pretrial conference on April 1, 2010, at 1:30 p.m.

and a jury trial on April 12, 2010, at 9:00 a.m.

                ENTERED this 26th day of March, 2010

                      **s/ Michael P. McCuskey**
                    MICHAEL P. McCUSKEY
                  CHIEF U.S. DISTRICT JUDGE