UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| THE ANDERSONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case Nos. 08-CV-2083 |
| v. ) | 08-CV-2098 |
| ) | |
| JERRY G. WALKER, ELLEN M. WALKER, ) | |
| STEPHANIE WALKER SPIROS, JEREMY ) | |
| WALKER, and FALL GRAIN, INC., ) | |
| ) | |
| Defendants. ) | |

OPINION

This case is before the court for ruling on the Motions in Limine filed by the parties. This court has carefully reviewed the arguments of the parties and the documents provided. Following this careful and thorough review, this court rules as follows: (1) Plaintiff's First Motion in Limine to Exclude References to its Business Dealings with Third Parties (#50) is DENIED; (2) Plaintiff's Second Motion in Limine to Exclude Evidence Purporting to Challenge Fall Grain's Liability to Plaintiff Pursuant to the Underlying Grain Contracts (#52) is DENIED; and (3) Defendants' Motions in Limine (#54) are GRANTED in part and DENIED in part.

MOTIONS IN LIMINE

I. STANDARD

The "motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir. 1997). A motion in limine "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions

that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." Jonasson, 115 F.3d at 440.

## II.  PLAINTIFF'S FIRST MOTION IN LIMINE

On March 11, 2010, Plaintiff filed its First Motion in Limine to Exclude References to its Business Dealings with Third Parties (#50) and a Memorandum of Law in Support (#51). Plaintiff asked this court to bar Defendants from referencing any of Plaintiff's efforts to procure guarantee agreements from or other transactions with any third parties in the jury's presence. Plaintiff argued that this evidence would be irrelevant and rely on inadmissible hearsay. Plaintiff also argued that, even if the evidence was admissible, it would be unduly prejudicial to Plaintiff. Plaintiff contended that the manner in which it may have chosen to manage its business relationship with other grain sellers is simply not relevant to any matter at issue in this lawsuit because this lawsuit only concerns the business relationship between Plaintiff and Defendants.

On March 29, 2010, Defendants filed their Response in Opposition to Plaintiff's Motion in Limine (#57). Defendants argued that Plaintiff's efforts to procure guarantee agreements with other farmers, and its transactions with other farmers, are relevant for two reasons. Defendants argued that the first reason is that they believe that Plaintiff may argue to the jury, as it did in its Motion for Summary Judgment, that it sought guarantees from the individual Defendants because it had a particular concern regarding Defendant Fall Grain, Inc. (Fall Grain). Defendants argued that they must be allowed to present evidence to controvert this assertion by showing that Plaintiff sought guarantees from individuals affiliated with another large grain seller, and met with them on August 14, 2007, the same day that Larry Wood and Matt Anderson met with Defendants Jerry Walker and Stephanie Spiros. Defendants argued that the second reason is that they believe that Plaintiff may argue to the jury, as it did in its Motion for Summary Judgment, that it did not permit rolling of

2

hedge-to-arrive grain contracts with farmers from one crop year to another. Defendants argued that they must be allowed to present evidence to counter this assertion by showing that Plaintiff did, in fact, permit hedge-to-arrive grain contracts with other farmers to be rolled from one crop year to the next.

This court agrees with Defendants that, based upon the arguments made by Plaintiff in its Motion for Summary Judgment, the evidence Plaintiff is seeking to prohibit is relevant and should be allowed in this case. Accordingly, because Plaintiff has not shown that the evidence it seeks to exclude would clearly be inadmissible for any purpose, Plaintiff's First Motion in Limine (#50) is DENIED.

### III. PLAINTIFF'S SECOND MOTION IN LIMINE

On March 11, 2010, Plaintiff also filed its Second Motion in Limine to Exclude Evidence Purporting to Challenge Fall Grain's Liability to Plaintiff Pursuant to the Underlying Grain Contracts (#52) and a Memorandum of Law in Support (#53). Plaintiff asked this court to bar Defendants from re-litigating issues that were subject to arbitration between Plaintiff and Fall Grain by seeking admission of evidence relating to Fall Grain's obligations and related dealings with Plaintiff pursuant to the underlying grain contracts. Plaintiff argued that this evidence is barred by collateral estoppel and also argued that allowing Defendants to present evidence related to Fall Grain's supposed right to unilaterally amend delivery dates will prejudice Plaintiff. Plaintiff argued that allowing Defendants to present such evidence would unreasonably risk the creation of an impression that the issue of Fall Grain's liability to Plaintiff remains an open issue, even though the issue has been decided by arbitrator decisions which have been confirmed by this court.

In their Response in Opposition to Plaintiff's Motions in Limine (#57), Defendants noted that this court rejected Plaintiff's collateral estoppel argument in its Opinion (#56) entered on March 26,

2010. This court specifically found that the issues related to the procurement of the personal guarantees from the individual Defendants, and the liability of the individual Defendants based upon the personal guarantees, are completely different from the issue of whether Fall Grain breached its contracts with Plaintiff. Defendants argued that they are not seeking to re-litigate the issue of Fall Grain's liability before the jury. They stated that, instead, they are seeking to litigate, for the first time, the issue of whether the individual Defendants are not liable to Plaintiff because of Plaintiff's fraud upon the individual Defendants in the procurement of their personal guarantees or because of Plaintiff's failure to honor the promises it made to the individual Defendants in exchange for their execution and delivery of personal guarantees. Defendants argued that the issue of whether Plaintiff fraudulently procured the guarantees through false promises it made to the individual Defendants about permitting future rolling into the 2008 or 2009 crop years and about making timely payment for all grain deliveries and the issue of whether Plaintiff failed to honor the promises it made in exchange for the personal guarantees are relevant to the affirmative defenses and claims of the individual Defendants. Defendants contended that the relevance of this evidence far outweighs any conceivable unfair prejudice to Plaintiff.

This court agrees with Defendants that they are entitled to litigate the issues related to the procurement of the personal guarantees, including evidence regarding any promises made by Plaintiff and regarding whether the promises were honored by Plaintiff. Therefore, accepting Defendants' statement that they are not seeking to re-litigate the issue of Fall Grain's liability to Plaintiff before the jury, this court concludes that Plaintiff is not entitled to an order barring Defendants from seeking admission of evidence relating to Fall Grain's obligations and related dealings with Plaintiff pursuant to the underlying grain contracts. Accordingly, Plaintiff's Second Motion in Limine (#52) is DENIED.

## IV. DEFENDANTS' MOTIONS IN LIMINE

On March 11, 2010, Defendants filed their Motions in Limine (#54). Defendants sought an order from this court barring Plaintiff from: (1) introducing evidence or argument regarding prior litigation in which Jerry Walker was involved; (2) introducing evidence or argument regarding the prior arbitration proceedings between Fall Grain and Plaintiff, including this court's order compelling arbitration; (3) introducing evidence or argument regarding settlement negotiations between Plaintiff and Jerry Walker and Stephanie Spiros in 2008, including evidence regarding discussions between Jerry Walker and Dawn Betancourt, a representative of Plaintiff, on January 29, 2008; and (4) introducing evidence or argument regarding grain deliveries made by Defendants to buyers other than Plaintiff after December 2007.

On March 25, 2010, Plaintiff filed its Memorandum in Response to Defendants' Motions in Limine (#55). Plaintiff argued that all four of Defendants' requests should be denied.

### A. PRIOR LITIGATION

At his deposition taken on September 15, 2009, Jerry Walker was asked whether he had given a deposition before. He testified that he had been deposed on two prior occasions, during litigation regarding an airplane he had purchased with two other individuals in 2006 and during litigation regarding a truck about 30 years ago. Defendants argued that evidence regarding the prior litigation in which Jerry Walker was involved is not relevant to the current action and should not be admitted at trial.

In response, Plaintiff argued that it believes that Defendants may attempt to introduce evidence at trial tending to suggest that they are but simple farmers with little business sophistication who were taken advantage of by a business-savvy corporation. Plaintiff argued that, to refute this impression, it should remain free to introduce evidence tending to show that the scope of the

5

business-related exploits of Defendants required the procurement of an airplane and that Defendants are not new to the litigation process.

The evidence before this court, however, does not show that the airplane Jerry Walker purchased with two other partners had anything to do with his business. Plaintiff did not explore this connection at the deposition and will not be allowed to try to make the connection at trial. Further, anyone from any walk of life can be involved in litigation, so this court concludes that Jerry Walker's involvement in two prior lawsuits in the last 30 years has no relevance to his "sophistication." Therefore, Defendants' first request is GRANTED. This court notes that Plaintiff's best avenue for refuting any claim by Defendants of a lack of business sophistication would be to present evidence regarding the size and scope of Defendants' business.

## B. ARBITRATION PROCEEDINGS

As noted, Defendants are seeking an order barring Plaintiff from presenting evidence or argument regarding the arbitration proceedings between Plaintiff and Fall Grain. In its response, Plaintiff argued that, if this court rejects Plaintiff's collateral estoppel argument (which this court has), then "evidence of the proceedings before the arbitrators and before this court in confirming arbitration awards would be necessary to prove Fall Grain's underlying liability and the related fact that a determination had been made that Fall Grain did not have the unilateral right to amend the Grain Contracts and deliver grain in future crop years." Plaintiff argued that it must remain free to present evidence showing that Fall Grain was liable to Plaintiff in seeking to prove that the individual Defendants are liable to Plaintiff under the personal guarantees and to demonstrate that, as part of that liability, it was determined that Fall Grain did not have the unilateral right to select delivery dates.

This court agrees with Plaintiff on this point. It is relevant to these proceedings that Fall

Grain has been found liable to Plaintiff. This is the basis for Plaintiff claiming that the individual Defendants are liable based upon their personal guarantees. This court concludes, however, that the jury just needs to be informed that the dispute between Plaintiff and Fall Grain was submitted to arbitration and the arbitrators found in favor of Plaintiff so Fall Grain's liability has been established and does not need to be determined by the jury. The issue before the jury in this case will be the liability of the individual Defendants, if any, based upon the personal guarantees.

For all of the reasons stated, Defendants' second request, that this court bar Plaintiff from presenting evidence or argument regarding the arbitration proceedings between Plaintiff and Fall Grain, is DENIED.

### C. JANUARY 29, 2008 DISCUSSION

At his deposition, Jerry Walker was questioned about a discussion he had with Dawn Betancourt on January 29, 2008. According to an email sent by Betancourt to various persons employed by Plaintiff, at the meeting "Jerry looked me right in the eye and said, 'I owe you the money. It is my debt. I will pay you the money.'" When he was questioned about this statement, Jerry Walker testified, "[t]he statement I made was that I said that I would - - that I would like to - - to pay this with corn with contracts, not with cash. I wanted to deliver corn against this obligation." He further testified that he said "that I would give them corn for the debt." Defendants argued that any evidence regarding statements Jerry Walker made on January 29, 2008, should not be admitted because they were made during settlement discussions with Betancourt. Defendants noted that evidence of "conduct or statements made in compromise negotiations regarding the claim" are inadmissible under Rule 408 of the Federal Rules of Evidence. Fed. R. Evid. 408; Clevenger v. Bolingbrook Chevrolet, Inc., 401 F. Supp. 2d 878, 880-81 (N.D. Ill. 2005).

In its response, Plaintiff acknowledged that it had commenced an arbitration proceeding by

7

the time this conversation occurred but noted that the lawsuit was not filed until April 2008. Plaintiff argued that Jerry Walker's statement was not made as part of settlement negotiations and should be admitted.

Rule 408 prohibits the admission of evidence of statements made in compromise negotiations if offered as an admission of the validity or invalidity of the claim or its amount under negotiation. Raybestos Prods. Co. v. Younger, 54 F.3d 1234, 1241 (7th Cir. 1995); see also Clevenger, 401 F. Supp. 2d at 881. In this case, it is apparent that Plaintiff wants to present evidence of Jerry Walker's statements as an admission of the validity of Plaintiff's claim. Therefore, if Rule 408 applies, this evidence is inadmissible. Plaintiff is correct, however, that Rule 408 only applies if the party seeking a ruling of inadmissibility makes a "substantial showing" that the evidence was part of settlement negotiations. See Raybestos Prods. Co., 54 F.3d at 1241. In making this determination, this court must "look at the totality of the circumstances." See Raybestos Prods. Co., 54 F.3d at 1241.

This court has carefully reviewed Betancourt's email and Jerry Walker's deposition testimony. Based upon the email, it is clear that the meeting was held for purposes of attempting to negotiate a resolution to an ongoing dispute, regarding which arbitration proceedings had already commenced. This court therefore concludes that any evidence regarding Jerry Walker's statements to Betancourt on January 29, 2008, are inadmissible under Rule 408. Cf. Lee Middleton Original Dolls, Inc. v. Seymour Mann, Inc., 299 F. Supp. 2d 892, 895-86 (defendant not entitled to protections provided by Rule 408 because there was nothing to indicate that parties were engaging in settlement discussions). Accordingly, Defendants' third request is GRANTED.

### D. GRAIN DELIVERIES TO OTHER BUYERS

Defendants have also asked this court to enter an order barring Plaintiff from presenting any evidence that Fall Grain made grain deliveries to other buyers after December 2007. Defendants

argued that this evidence would "shed no light on [Plaintiff's] claims in the current action" and would be highly prejudicial to Defendants because it would "distract the jury from the real issues in this case."

In its response, Plaintiff argued that "[l]ittle could be more relevant than Fall Grain's dealings with third party grain buyers." Plaintiff argued that this evidence is relevant to show the context in which the guarantees were procured and stated that it believes that the evidence will show that Fall Grain was taking advantage of a rising market to obtain a higher price for its grain by selling it though "spot" deliveries, deliveries which were not contractually obligated, instead of selling it to Plaintiff under Fall Grain's preexisting contracts with Plaintiff. Plaintiff stated that it intends to present this evidence to show that this belief on the part of Plaintiff prompted its efforts to procure the guarantees and also to refute Defendants' claims that Fall Grain intended to honor its contractual obligations to Plaintiff. Plaintiff argued that this evidence is also relevant to refute Defendants' claim that Plaintiff fraudulently induced the individual Defendants into signing the guarantees. In addition, Plaintiff argued that evidence of Defendants' dealings with third party grain buyers, like Bunge, illustrate industry standards and course of dealing and tend to belie Defendants' contention that they had a unilateral and unlimited right to amend the delivery date of any grain contract to a crop year of their choosing.

This court concludes that Plaintiff has persuasively argued that this evidence is relevant to the issues to be presented to the jury. Accordingly, because Defendants have not shown that this evidence clearly would be inadmissible for any purpose, Defendants' fourth request is DENIED.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's First Motion in Limine to Exclude References to its Business Dealings with Third Parties (#50) is DENIED.

(2) Plaintiff's Second Motion in Limine to Exclude Evidence Purporting to Challenge Fall Grain's Liability to Plaintiff Pursuant to the Underlying Grain Contracts (#52) is DENIED.

(3) Defendants' Motions in Limine (#54) are GRANTED in part and DENIED in part.

(4) This case remains scheduled for a final pretrial conference on April 1, 2010, at 1:30 p.m. and a jury trial on April 12, 2010, at 9:00 a.m.

ENTERED this 31st day of March, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE