**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| **THE ANDERSONS, INC.,** ) | | |
| ) | | |
| **Plaintiff,** ) | | |
| ) | **Case Nos.** | **08-CV-2083** |
| v. ) | | **08-CV-2098** |
| ) | | |
| **JERRY G. WALKER, ELLEN M. WALKER,** ) | | |
| **STEPHANIE WALKER SPIROS, JEREMY** ) | | |
| **WALKER, and FALL GRAIN, INC.,** ) | | |
| ) | | |
| **Defendants.** ) | | |

**OPINION**

This case is before the court for ruling on additional Motions in Limine filed by the parties. This court has carefully reviewed the arguments of the parties and the documents provided. Following this careful and thorough review, this court rules as follows: (1) Defendants' Second Set of Motions in Limine (#64) are GRANTED in part and DENIED in part; (2) Plaintiff's Third Motion in Limine Related to Defendants' Purported Damages (#65) is GRANTED; and (3) Plaintiff's Fourth Motion in Limine Related to Ethanol Production (#67) is GRANTED in part and DENIED in part.

DEFENDANTS' SECOND SET OF MOTIONS IN LIMINE

On April 5, 2010, Defendants filed their Second Set of Motions in Limine (#64). Defendants are seeking an order from this court barring Plaintiff from introducing evidence or making statements in the jury's presence regarding: (1) other names used by Jerry Walker; (2) internal notes, memoranda and e-mails prepared by Plaintiff; (3) whether the nature of the contracts with Fall Grain gave Fall Grain the right to roll the contracts' obligations to other crop years; (4) Bunge records produced pursuant to subpoenas; (5) the testimony of Dawn Betancourt; and (6) the testimony of Jason Zilles.

On April 7, 2010, Plaintiff filed its Memorandum in Response to Defendants' Supplemental Motions in Limine (#72). Plaintiff asked that all of Defendants' requests be denied.

1.  Other names used by Jerry Walker

Defendants stated that they believe that Plaintiff may refer to Jerry Walker as "Jerry G. Walker a/k/a Jerry Gene Walker" or "Jerry G. Walker also known as Jerry Gene Walker." Defendants argued that there was no dispute regarding the identity of Jerry Walker or regarding his name or his middle initial. Defendants therefore argued that any such reference would have no purpose other than to attempt to cast suspicion on him in the eyes of the jury. In its Response, Plaintiff has stated only that it "should be able to refer to Defendant Jerry Walker by his name."

This court concludes that Plaintiff certainly can refer to Jerry Walker by his name, Jerry Walker. This court agrees with Defendants that there is no reason to include any "a/k/a" or "also known as" references in discussing Jerry Walker. This request by Defendants is GRANTED.

2.  Internal notes, memoranda and e-mails prepared by Plaintiff

Defendants next stated that they believe that Plaintiff may attempt to refer to or introduce into evidence various notes, internal memoranda and e-mails created, sent or received by Plaintiff's witnesses Matt Anderson, Larry Wood, Joe Needham, Hal Reed, Dawn Betancourt and Jason Zilles. Defendants noted that these documents are listed on Plaintiff's exhibit list and argued that they should not be admitted because they were prepared in anticipation of litigation and are not admissible under any exception to the hearsay rule. See Melendez-Diaz v. Mass., ___ U.S. ___, 129 S. Ct. 2527, 2538 (2009). Defendants argued that the documents are wholly self-serving, were created in the context of consultation with Plaintiff's in-house counsel at a time when Plaintiff admitted its was already anticipating litigation, and seek to justify Plaintiff's behavior in relation to its procurement of the personal guarantees from Defendants.

In its Response, Plaintiff argued that the documents should be admitted because: (1) some of the documents are admissible under Rule 801(d)(2) of the Federal Rules of Evidence because they contain admissions by Defendants Jerry Walker and Stephanie Spiros, who are parties to this action, which Defendants admit are accurate; (2) some of the documents are recorded recollections and may be admissible under Rule 803(5) of the Federal Rules of Evidence if a witness at trial "now has insufficient recollection to enable the witness to testify fully and accurately;" (3) some of the documents are admissible under Rule 803(3) of the Federal Rules of Evidence to show the state of mind and understanding of the parties regarding their dealings; and (4) the documents are admissible under Rule 803(6) of the Federal Rules of Evidence as business records prepared and kept in the ordinary course of business.

This court agrees with Plaintiff that, to the extent that documents contain admissions of Defendants Jerry Walker and Stephanie Spiros, which Defendants admitted were accurate, those documents are admissible under Rule 801(d)(2). This court also agrees with Plaintiff that some of the documents may be used at trial to refresh a witness's recollection under Rule 803(5). That determination cannot be made until during the trial. This court does not agree, however, that the documents are admissible under Rule 803(3) and Rule 803(6).

This court concludes that the documents are not admissible under Rule 803(3) as a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition." Obviously, Plaintiff's employees will be testifying regarding their state of mind during their conversations with Defendants and the understanding of the parties. Plaintiff does not need the documents to bolster this testimony.

This court also concludes that the documents, many of which discuss the ongoing disputes between Plaintiff and Fall Grain, which were ultimately decided in arbitration, are not admissible

as business records. Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status. Melendez-Diaz, 129 S. Ct. at 2538, citing Fed. R. Evid. 803(6). "But that is not the case if the regularly conducted business activity is the production of evidence for use at trial.' Melendez-Diaz, 129 S. Ct. at 2538. This is because such records are "calculated for use essentially in the court, not in the business." Melendez-Diaz, 129 S. Ct. at 2538, quoting Palmer v. Hoffman, 318 U.S. 109, 114 (1943). Plaintiff argues that many of the documents at issue here were created months in advance of this litigation and Plaintiff's engagement of counsel.[1] This court concludes, however, that the only purpose for admitting the documents would be to bolster the testimony of Plaintiff's employees through records prepared to document Plaintiff's side of the dispute.

For all of the reasons stated, this request by Defendants is GRANTED in part and DENIED in part. The documents are admissible to the extent that they contain admissions of Defendants Jerry Walker and Stephanie Spiros, which Defendants have admitted are accurate. The documents may also be used at trial to refresh a witness's recollection if the requirements of Rule 803(5) are met. Otherwise, the documents will not be admitted at trial.

### 3. Whether Fall Grain had tight to roll contracts

Defendants next stated that they believe that Plaintiff will refer to the issue of whether Fall Grain had the right, under the terms and provisions of its contracts as originally entered into with

---

[1] In particular, Plaintiff argued that notes made into its customer database or "Call Tracking" system are used to manage customer relationships and are therefore documents kept in the course of a regularly conducted business activity. Plaintiff noted that the "centrality of this information is attested to by the fact that Defendants' Exhibit No. 1 consist[s] of pages of entries from this Call Tracking system." This court concludes that, if Defendants open the door by introducing some of the documents prepared by Plaintiff, Plaintiff may certainly counter that evidence by introducing documents which put the documents introduced by Defendants into context or contradict them.

Plaintiff, to unilaterally roll the delivery dates of those contracts from one crop to the next as one to be decided by the jury. Defendants conceded that, in arbitration, one issue that may have been decided was whether the designation of the contract as a flex hedge-to-arrive (HTA) contract, alone, gave the seller the right to roll. Defendants argued, however, that the arbitrators did not rule on the separate issue to be presented to the jury here, namely, whether Plaintiff promised Defendants that rolling of those contracts would be permitted if Defendants signed the personal guarantees. Defendants argued that Plaintiff's attempt to conflate these two separate issues into one would cause Defendants undue prejudice at trial.

In its Response, Plaintiff argued that Defendants themselves have made this an issue at trial. Plaintiff noted that Defendants' Complaint, which has not been amended, alleged that Plaintiff "failed and refused to honor the terms of the HTA contracts and to roll those contracts until Fall Grain elected to deliver grain to them." Plaintiff further noted that, as to their fraud claim, Defendants asserted that Plaintiff assured them that it would "ensure rolling according to the terms of the HTA contracts and not cancel those contracts *until* Fall Grain *elected* to deliver against them (emphasis added)." Plaintiff argued that there can be no question that Defendants have interjected the issue of the effect of the nature of an HTA contract into this proceeding and evidence that Plaintiff seeks to admit on this and other related issues should not be excluded. Plaintiff contended that this evidence directly calls into question the reasonableness of Defendants' supposed reliance on the promise they charge Plaintiff with making and is admissible because it calls into question whether such a promise would be needed if Defendants truly believed that Fall Grain already possessed a right to amend the grain contracts' crop year by virtue of the contracts being HTA contracts. Plaintiff argued that evidence of grain industry standards belies Defendants' reasonableness in believing such a promise was made, and the jury should be free to hear evidence

5

of what Defendants purported to believe in light of actual industry standards.

This court agrees with Plaintiff that Defendants's own claims have made this an issue in this case and there is no basis for this court to exclude evidence regarding whether Fall Grain had the right, under the terms and provisions of its contracts as originally entered into with Plaintiff, to unilaterally roll the delivery dates of those contracts from one crop to the next. This request by Defendants is DENIED.

### 4. Bunge exhibits

Defendants stated that Plaintiff has listed on its exhibit list, as Exhibit 102, over 1,400 pages of records it received from Bunge Milling, Inc. in response to a subpoena for records. Defendants argued that this undifferentiated mass of documents contains much that is irrelevant to any issue before the jury. In particular, Defendants argued that records of deliveries made by Fall Grain to Bunge during the 2007-08 crop year after Plaintiff cancelled all contracts with Fall Grain for that crop year are irrelevant.

In its Response, Plaintiff argued that Defendants' concern over the Bunge documents is moot because Plaintiff has supplemented its previous list of trial exhibits on April 5, 2010, and has greatly narrowed the number of documents designated as trial exhibits. Plaintiff stated that the specific documents listed are relevant because they evidence grain industry standards and tend to show that the existence of Plaintiff's alleged oral promise is less probable.

This court notes that the exhibit list Plaintiff included in its Pre-Trial Memorandum (#69) still lists, as Exhibit 102, "Bunge business records, BUN0001-1409." This appears to be the same over 1,400 pages listed on Plaintiff's exhibit list in the Final Pre-trial Order (#59). So this court cannot find this issue moot. This court does agree with Plaintiff, however, that Plaintiff should be able to introduce Bunge records which evidence grain industry standards and tend to show that the

existence of Plaintiff's alleged oral promise is less probable. Plaintiff will therefore be allowed to introduce a limited number of relevant Bunge documents. Accordingly, Defendants' request is DENIED.

### 5. Testimony of Dawn Betancourt

Defendants next stated that they believe Plaintiff intends to present the testimony of Dawn Betancourt to the jury. Defendants contended that Betancourt did not become involved in any way with the situation that developed between Fall Grain and Plaintiff until December 2007. Defendants argued that Betancourt cannot provide testimony relevant to any issues before the jury in this case.

In its Response, Plaintiff argued that Betancourt was involved and can provide relevant testimony because some grain contracts were not cancelled until October 7, 2008, and others were not cancelled until July 2, 2009. Plaintiff stated that Defendants have stated that they informed Plaintiff over and over that they were exercising Fall Grain's promised right to amend the crop year of the grain contracts but their requests were denied by Plaintiff. Plaintiff stated that Betancourt will testify that Defendants never told her that Fall Grain had been promised any right to amend the grain contracts, even in the face of circumstances that would seem to demand assertion of this supposed right.

This court concludes that Plaintiff has shown that Betancourt's testimony will be relevant in this case. Defendants' request is DENIED.

### 6. Testimony of Jason Zilles

Defendants stated that they believe Plaintiff may present the testimony of Jason Zilles. Defendants argued that Zilles should not be allowed to testify because he was not listed by name as a person with knowledge of relevant events in Plaintiff's disclosures under Rule 26(a) of the Federal Rules of Civil Procedure. Defendants stated that, in addition, Plaintiff did not list Zilles in its sworn

answer to Defendants' Interrogatory No. 8 as a person likely to have discoverable information that Plaintiff may use to support its claims or defenses. Defendants argued that, due to Plaintiff's failure to properly disclose Zilles during discovery, it should be barred from introducing his testimony at trial. Defendants argued that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of 26(a) was either justified or harmless." Ty, Inc. v. Publications Int'l, Inc., 2004 WL 421984, at *2 (N.D. Ill. 2004), quoting Salgado v. Gen'l Motors Corp., 150 F.3d 735, 742 (7th Cir. 1998).

In its Response, Plaintiff argued that its failure to disclose Zilles as a witness is both justified and harmless. Plaintiff stated that its failure to disclose Zilles was justified because it only intends to call Zilles as a witness to explain how summaries of voluminous information that was either produced or possessed by Defendants were compiled under Betancourt's direction if Defendants oppose Betancourt's testimony for any reason. Plaintiff argues that its failure to disclose Zilles was harmless because of the limited purpose for which Plaintiff intends to use his testimony and because his disclosure as a witness does not cause unfair surprise because his name appears throughout documents produced to Defendants.

This court concludes that the sanction of barring Plaintiff's ability to call Zilles as a witness for the limited purpose set forth by Plaintiff is not warranted in this case. Consequently, Defendants' request is DENIED.

### PLAINTIFF'S THIRD MOTION IN LIMINE

On April 5, Plaintiff filed its Third Motion in Limine (#65) and a Memorandum in support (#66). Plaintiff argued that Defendants are seeking to introduce evidence regarding their alleged damages for grain delivered by Fall Grain to Plaintiff but for which Plaintiff allegedly failed to make timely payment. Plaintiff argued that Defendants do not have the right to make any such claim for

damages, and any evidence and arguments related to Plaintiff's alleged failure to make payment to Fall Grain would only mislead the jury and confuse the issues. Plaintiff argued that, under federal and Illinois law, a stockholder had no personal or individual right of action against third persons for damages that result indirectly to the stockholder because of an injury to the corporation. See Carney v. Gen'l Motors Corp., 23 F.3d 1154, 1157 (7th Cir. 1994). Plaintiff contended that because Fall Grain is the injured party regarding any claim for failure to pay and any injury suffered by Defendants as a result of Plaintiff's alleged failure to pay Fall Grain is indirect, Defendants cannot bring such a claim for damages.

On April 7, 2010, Defendants filed their Response in Opposition to Plaintiff's Third and Fourth Motions in Limine (#70). Defendants first argued that Plaintiff's motion is really a case dispositive motion which is improper at this stage of the proceedings. Secondly, Defendants argued that Plaintiff has mischaracterized Defendants' computation of damages. Defendants stated that they are not seeking damages as stockholders in Fall Grain but, instead, are seeking damages arising out of Plaintiff's breach of the promises made to them in connection with their personal guarantees. Defendants stated that, despite Plaintiff's promise to Defendants, in exchange for their guarantees, that Plaintiff would make timely payment for grain deliveries by Fall Grain, Plaintiff withheld payment for grain delivered from September through November 2007. Defendants stated that Plaintiff generated a settlement statement dated December 5, 2007 and offset the earlier amount owed for grain deliveries against later contract cancellations. Defendants then stated:

> Had [Plaintiff] honored its promises to the Defendants, it would have made payment in full for all grain deliveries, Fall Grain would have taken its 2 cents per bushel commission (which 2 cents per bushel is not part of Defendants' damages computation but rather explicitly

> subtracted from it), and the remainder would have been paid to Walker Place. As [Plaintiff] concedes, Walker Place is a partnership, not a corporation. And, at the time, Defendants collectively owned a 49.9999% interest in Walker Place.

Defendants then stated that they have brought their claim for damages in their own names and have limited their computation of damages to that portion of grain proceeds which would have been paid to them, if Plaintiff had honored its promises.

This court cannot agree with Defendants' convoluted argument regarding their claim for damages. Even though Defendants claim that their right to damages is based upon promises made to them, the alleged promises were that Plaintiff would pay Fall Grain based on deliveries of grain Fall Grain made under its contracts with Plaintiff. The issue here is Defendants' right to obtain damages based upon payments due to a different party, Fall Grain, who then would have paid yet another entity, Walker Place, who is not even a party to this lawsuit. A well-established prudential standing limitation is the principle that a litigant cannot sue in federal court to enforce the rights of third parties. Rawoof v. Texor Petroleum Co., 521 F.3d 750, 757 (7th Cir. 2008). A particular subset of the third-party standing doctrine is the shareholder-standing rule which "holds that a shareholder generally cannot sue for indirect harm he suffers as a result of an injury to the corporation." Rawoof, 521 F.3d at 757. Prudential limitations on standing may be raised by the court on its own. Rawoof, 521 F.3d at 757.

Defendants' argument that they would have ultimately received a portion of payments made by Plaintiff to Fall Grain actually seems like a third party beneficiary claim. However, Defendants have not made a third party beneficiary claim and this type of claim has been rejected as contrary to the corporate form and the rules of agency. See Shreeji Krupa, Inc. v. Leonardi Enters., 2007 WL

178305, at *3 (N.D. Ill. 2007), citing Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 477-79 (2006). The Seventh Circuit recently stated that there is a strong presumption in Illinois law against the creation of contractual rights in third parties so that any intent to benefit a third party must be discernible in the language and circumstances of the contract. Rawoof, 521 F.3d at 759. The grain contracts in this case do not contain any language stating that there was an intent to benefit Defendants. Moreover, it is well settled law in Illinois that a person's status as a guarantor of corporate debt does not result in a contractual relationship sufficient to create standing to bring suit for breach of a contract with the corporation. See Shreeji Krupa, Inc., 2007 WL 178305, at *3; Thomas v. Nat'l Canada Fin. Corp., 1995 WL 54473, at *1-2 (N.D. Ill. 1995); ARH Distributors, Inc. v. ITT Commercial Fin. Corp., 1987 WL 17834, at *2 (N.D. Ill. 1987).

This court concludes that there is simply no way around the fact that the right to receive payment for grain delivered to Plaintiff belonged to Fall Grain, not Defendants. Therefore, Plaintiff's Third Motion in Limine must be granted. In doing so, this court notes that the issue of prudential standing may be raised at any time, and can even be raised by the court on its own. Accordingly, this court does not find persuasive Defendants' argument that Plaintiff's Motion was brought at an improper time.

For all of the reasons stated, Plaintiff's Third Motion in Limine (#65) is GRANTED.[2]

## PLAINTIFF'S FOURTH MOTION IN LIMINE

On April 5, 2010, Plaintiff filed its Fourth Motion in Limine to Exclude References to its Plans or Involvement with Ethanol Production (#67) and a Memorandum in Support (#68). Plaintiff

---

[2] This court notes that, by this ruling, it does not intend to prohibit Defendants from introducing evidence that Plaintiff did not comply with its alleged promise to make timely payment to Fall Grain after the August 14, 2007 meeting. This evidence is relevant to Defendants' claim of fraud. Defendants cannot, however, claim damages based upon this evidence.

11

stated that Defendants have indicated that they will seek to admit evidence related to Plaintiff's plan to produce ethanol and/or construct an ethanol production facility. Plaintiff noted that, at his deposition, Jerry Walker testified that Plaintiff had plans to construct an ethanol plant and was encouraging grain sellers to enter into additional hedge contracts for corn to support its operation. Jerry Walker also testified that he believed these added hedge contracts resulted in a "cash flow" problem for Plaintiff in having to meet the margin call requirements of the Chicago Board of Trade which prompted the alleged broad-based effort to obtain personal guarantees. Plaintiff noted that Jerry Walker admitted no one from Plaintiff conveyed this information to him. In addition, Stephanie Spiros testified that her conclusion relating to Plaintiff's business dealings was pure speculation and not based on any personal knowledge.

Plaintiff argued that the allegations and facts regarding Plaintiff's plans or involvement in the production of ethanol are not relevant and would needlessly prolong the trial and subject the jurors to evidence that would be confusing and pose the risk of misleading the jurors from the relevant inquiry, Defendants' liability under the personal guarantees.

On April 7, 2010, Defendants filed their Response in Opposition to Plaintiff's Third and Fourth Motions in Limine (#70). Defendants argued that they intend to introduce evidence of conversations they had with Larry Wood, an employee of Plaintiff, regarding his request for Fall Grain to originate more corn per crop year than it had done in previous years to assist Plaintiff in its plans to build an ethanol plant in Central Illinois. Defendants stated that Larry Wood told Jerry Walker and Stephanie Spiros that Plaintiff needed to obtain significant grain commitments from local farmers in order to support its ethanol plans.

Defendants argued that this evidence is relevant for two reasons: (1) the evidence demonstrates one item of concern that Jerry Walker and Stephanie Spiros had which led them to

request the August 14, 2007, meeting and will tend to shed light on what happened at the August 14, 2007, meeting and why; and (2) the earlier conversations with Larry Wood bear upon Defendants' justifiable reliance on the promises made by Plaintiff at the August 14, 2007, meeting because "[a]fter Jerry Walker and Stephanie Spiros had done Larry Wood the favor of originating an extraordinary amount of corn with Andersons to support what he had stated was Andersons' ethanol plans, it only stood to reason from their viewpoint that Anderson would accede to their request at the August 14, 2007 meeting for the ability to roll grain contracts into subsequent crop years so that Fall Grain could deliver against them." Defendants argued that their conversations with Larry Wood are not hearsay and should be allowed. They also argued that it is undisputed that Plaintiff did not build an ethanol plant in Central Illinois and they will not ask the jury to speculate as to the reasons why.

The issue before the jury in this case will be the enforceability of the personal guarantees signed by Defendants. This court concludes that there may be some minimal relevance regarding Larry Wood's request to Defendants that they enter into contracts, on behalf of Fall Grain, for more corn than they had in the past. That evidence will be allowed. However, this court concludes that any further evidence or speculation regarding how this could have impacted the meeting on August 14, 2007 will not be allowed. Defendants will be allowed to testify as to what occurred at the meeting and what was said or promised to them but cannot be allowed to speculate as to why Plaintiff may have been inclined to make certain promises to them.

Accordingly, Plaintiff's Fourth Motion in Limine (#68) is GRANTED in part and DENIED in part. Defendants will be allowed to introduce evidence that Larry Wood encouraged them to enter into contracts, on behalf of Fall Grain, for more corn than in previous years, but any other evidence or speculation regarding ethanol plants or production will not be allowed.

13

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Second Set of Motions in Limine (#64) is GRANTED in part and DENIED in part.

(2) Plaintiff's Third Motion in Limine to Exclude Evidence Relating to Damages (#65) is GRANTED.

(3) Plaintiff's Fourth Motion in Limine to Exclude References to its Plans or Involvement with Ethanol Production (#67) is GRANTED in part and DENIED in part.

(4) This case remains scheduled for a jury trial on April 12, 2010, at 9:00 a.m.

ENTERED this 9th day of April, 2010.

s/MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE